UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ARLENE CLAIBORNE-INGRAM,        )
        Plaintiff,              )
                                )
            v.                  )
                                )    CIVIL ACTION NO. 09-11481-PBS
                                )
DOUGLAS S. HATFIELD,            )
        Defendant.              )

**MEMORANDUM AND ORDER**
February 2, 2012

SARIS, U.S.D.J.

## I.    INTRODUCTION

Now before this Court is plaintiff Arlene Claiborne-Ingram's ("Claiborne-Ingram") Motion for Contempt (Docket No. 88), with an incorporated request to set aside the Judgment of Dismissal of this action entered on October 29, 2010.

### A.    Background

This case has had a contentious course in this Court, and the conduct of the parties is germane to the issues raised in connection with the Motion for Contempt.  Therefore, without addressing each and every document in the record, the salient background is summarized as follows.

On September 8, 2990, Claiborne-Ingram filed suit in this Court seeking to collect on her alleged interests in two trusts created by her late husband, Osborne F. Ingram ("Ingram"), during

his lifetime.[1]  One trust was revocable and the other
irrevocable.  The beneficiaries of the revocable trust included
the Claiborne-Ingram, Ingram's three children from a first
marriage, various charities, and Ingram's grandchild.  The assets
of the trust consisted of a promissory note for $435,000.00 and a
note secured by a mortgage for $950,000.00.  Both notes become
due in 2012.

The beneficiaries of the irrevocable trust (as amended) were
Ingram's three children, however, Claiborne-Ingram was <u>not</u> named
as a beneficiary of that trust.  Claiborne-Ingram alleged in this
action that she was entitled to proceeds from her late husband's
estate, including proceeds from <u>both</u> trusts, pursuant to her
statutory share.[2]  She sued Douglas S. Hatfield ("Hatfield"), the
trustee of Ingram's estate (who also was the creator of the two
trusts) seeking distribution of the trust assets to her.[3]

Along with the complaint, Claiborne-Ingram filed a Motion
for a Temporary Restraining Order (Docket No. 4) to preclude the

---

[1]Ingram died intestate.  There was a Will, which was not probated
because it predated the marriage of Claiborne-Ingram and Ingram,
and therefore was considered to be a revoked Will under Mass.
Gen. Law ch. 191, § 9.

[2]Under Chapter 190, section 1 of the Massachusetts General Laws,
a widow is entitled to 50% of the net assets of the probate
estate.  <u>See</u> Mass. Gen. Law ch. 191, § 1.

[3]Hatfield was also Ingram's son-in-law.

payout of the trust assets. This Court denied the motion, by Electronic Order, on an *ex parte* basis. Thereafter, Hatfield answered the complaint denying that Claiborne-Ingram was entitled to benefits under a revocable trust, but conceded that she was entitled to her statutory share with respect to assets of Ingram's estate. See Answer (Docket No. 7).

On October 6, 2009, this Court held a hearing on the Motion for a Temporary Restraining Order. At the hearing, Claiborne-Ingram argued that the state inheritance statute trumps private placement of funds through trusts, and requested that Hatfield be restrained from distributing or disposing of, in any manner, all funds in both trusts and Ingram's personal assets. In response, counsel for Hatfield, Attorney Richard Henderson, stipulated that until further order of this Court, the trustee would not distribute anything from the revocable trust in which Claiborne-Ingram had a beneficial interest. See Transcript (Docket No. 13 at p. 18, lines 11-13). Counsel also represented that no distribution would be made until the estate tax liability had been determined and a Massachusetts estate tax return filed (estimated to be within nine months from the date of Ingram's death).

Also at the hearing, Claiborne-Ingram argued that a distribution to the beneficiaries had already been made from the

irrevocable trust (in which she was not named as a beneficiary).
It was determined, however, that she was in error in this belief,
and that, in fact, no proceeds had been distributed from the
irrevocable trust.  Counsel for Hatfield then again stipulated
that he would not distribute the irrevocable trust "until the
litigation is resolved with respect to that trust or further
order of the Court."  Id. at p. 21, lines 18-20.  Based on this
stipulation that nothing was about to be distributed, this Court
denied the Motion for a Temporary Restraining Order and set a
discovery and summary judgment/dispositive motion schedule.  In
connection with any dispositive motion, the issue of the probate
exception to jurisdiction was to be addressed.  Further, this
Court discussed the question of how defense counsel (Attorney
Henderson) was going to get his attorney's fees paid.  Attorney
Henderson indicated that the first step was to have an
administrator appointed by the Plymouth County Probate Court
because nothing could be distributed until that was done.  In
this regard, this Court -- primarily addressing Claiborne-Ingram
– stated:

> THE COURT: [To Attorney Henderson] I think you need to
> get the administrator appointed because who's going to
> pay you?  And [to Claiborne-Ingram] here's the problem:
> That he gets paid.  I don't know what he makes an hour,
> but he gets paid.  And so that money will probably
> either come out of the trust or come out of the estate,
> which means it comes away from you.  So just understand

that basic fact of life.  If he's representing the
administrator, it comes out of the estate.  If he's
representing the trustee, I don't know if it comes out
of -- I don't know how the terms –
MR. HENDERSON: It does come out of the trust.
THE COURT: It comes out of the body of the trust.
MR. HENDERSON:  Correct.
THE COURT:  And so maybe it will come out of both
places.  I just don't know enough how it's all
structured.  So what I would strongly urge you to do,
since it's dissipating perhaps some of your own money
that you're getting, the attorneys fees, is that you
could talk settlement with him....

Id. at 24, lines 6-24 (brackets added).

That same day, Claiborne-Ingram filed another Motion for

Temporary Restraining Order (Docket No. 9) based on an alleged

default of the defendant.  This Court denied that motion by

Electronic Order.  She then filed a Motion for Re-Hearing on a

Restraining Order (Docket No. 12), which was also denied by

Electronic Order.

On November 30, 2009, Hatfield filed a Motion to Dismiss

(Docket No. 15) as a sanction against Claiborne-Ingram, on the

basis that she refused to attend her own deposition.  On December

11, 2009, Claiborne-Ingram filed a Motion for Arbitration

or Mediation (Docket No. 16).  On December 22, 2009, this Court

entered an Electronic Order denying the Motion to Dismiss,

denying Claiborne-Ingram's request to quash her deposition, but

granting her Motion for Arbitration/Mediation.  The case was

referred to this Court's Alternative Dispute Resolution Program the following day.

On December 28, 2009, Claiborne-Ingram filed a Motion to Compel Discovery (Docket No. 20), and the matter was referred to Magistrate Judge Robert B. Collings. On January 8, 2010, she filed a Motion for a Protective Order (Docket No. 24). That motion was also referred.

On January 19, 2010, Magistrate Judge Collings issued an Order (Docket No. 27) denying the Motion for a Protective Order (on the day of her rescheduled deposition), and ordering Claiborne-Ingram to submit to the taking of her deposition on February 3, 2010. The same day, Claiborne-Ingram filed an Emergency Motion to Stay Discovery (Docket No. 28). On January 20, 2010, Magistrate Judge Collings denied the motion and again ordered Claiborne-Ingram to appear at her re-scheduled deposition and bring all documents called for by the subpoena. On January 27, 2010, Claiborne-Ingram filed a Motion for Reconsideration on regarding Protective Order (Docket No. 30), and a Motion for Reconsideration on the Motion to Compel (Docket No. 31). On February 2, 2010, Magistrate Judge Collings again issued a directive that unless a Court of competent jurisdiction grants a stay before her re-scheduled deposition, Claiborne-Ingram was required to comply with the Court's Order to attend the

deposition.  That same day, Claiborne-Ingram filed a Motion to
Stay Deposition (Docket No. 36) and a Notice of Appeal (Docket
No. 37).[4]  Also that same day, this Court denied, by Electronic
Order, Claiborne-Ingram's Motion to Stay deposition and Motion
for Reconsideration on the Order on the Motion to Compel.  On
February 3, 2010, this Court denied Claiborne-Ingram's Motion for
Reconsideration on the Motion for a Protective Order.

On February 16, 2010, Claiborne-Ingram filed a Motion for
Moneys Paid into the Court (Docket No. 41) and a Motion to Set a
Trial Date (Docket No. 42).

On February 18, 2010, a Report of Alternative Dispute
Resolution (Docket No. 43) was filed indicating that further
efforts to settle the case were unlikely to be productive.  In
light of this report, this Court set a trial date and issued a
Pretrial Order (Docket No. 44).

On February 25, 2010, Hatfield filed a second Motion to
Dismiss (Docket No. 47) and for sanctions on the ground that
Claiborne-Ingram refused to obey orders of this Court with
respect to her participation in her deposition and production of
documents subpoenaed.

_____

[4]On May 14, 2010, the appeal was voluntarily dismissed upon
Claiborne-Ingram's unopposed Motion to Withdraw Appeal. See
Judgment (Docket No. 65); Corrected Mandate (Docket No. 67).

On March 4, 2010, Hatfield filed a Motion for Permission to Pay Bills From Trust's Assets (*i.e.* several thousand dollars in legal fees) (Docket No. 48). The next day, Claiborne-Ingram filed a Motion for this Court's Recusal (Docket No. 49), which was denied by Electronic Order on March 10, 2010. The case was then re-referred to Magistrate Judge Collings for pretrial management. On March 18, 2010, he denied, without prejudice, Hatfield's Motion to Pay Bills From Trust Assets on the basis that defense counsel had represented to this Court that no expenditures from the trusts would be made until final disposition of the case, and, since it was anticipated that the case would be resolved by trial shortly, there was no reason to allow payment for the trusts' attorney's fees and costs at that time. Magistrate Judge Collings also allowed Claiborne-Ingram's Motion for a Bench Trial, and set a non-jury trial and a summary judgment schedule (Docket No. 56).

On April 5, 2010, Hatfield filed a Motion for Summary Judgment (Docket No. 57), and the matter was referred to Magistrate Judge Collings. On August 2, 2010, a Report and Recommendation (Docket No. 72) issued in which Magistrate Judge Collings recommended that Hatfield's Motion to Dismiss, which was predicated on the alleged failure of Claiborne-Ingram to attend her deposition as directed, be denied. In that Report and

Recommendation, Magistrate Judge Collings stated: "[t]here is no question that the factual basis for the motion is well founded.... The only issue for the Court is whether the remedy should be a dismissal of plaintiff's claims or some lesser sanction." Report and Recommendation (Docket No. 72 at 1). In lieu of dismissal, it was recommended that Claiborne-Ingram be required to pay reasonable attorney's fees relating to the deposition.[5] Each party filed objections to the Report and Recommendation. On August 30, 2010, an Electronic Order issued in which this Court adopted the Report and Recommendation, and also ordered Claiborne-Ingram to produce the subpoenaed documents within 14 days.

Thereafter, on October 7, 2010, Hatfield filed a third Motion to Dismiss (Docket No. 79), which also was referred to Magistrate Judge Collings. On October 8, 2010, he issued a Further Report and Recommendation (Docket No. 80) in which he recommended that this action be dismissed <u>with</u> prejudice, that all pending motions be terminated, and that a final judgment of dismissal enter. In discussing the failure of Claiborne-Ingram to comply with the Court's directives regarding production of

---

[5]Attorney Henderson later filed an Affidavit indicating his costs and expenses. <u>See</u> Affidavit (Docket No. 75). To date, Claiborne-Ingram has not paid any amount toward these fees that she was ordered to pay.

subpoenaed documents, Magistrate Judge Collings stated: "[e]nough
is enough.  The plaintiff is blatantly flouting the orders of the
Court, and, accordingly, her case should be dismissed forthwith."
Report and Recommendation (Docket No. 80 at 2).

On October 29, 2010, after objections were filed by
Claiborne-Ingram, this Court adopted the Further Report and
Recommendation and dismissed this case.  <u>See</u> Order of Dismissal
(Docket No. 82).  On November 12, 2010, Claiborne-Ingram filed a
Notice of Appeal (Docket No. 83).

On July 5, 2011, the United States Court of Appeals for the
First Circuit ("First Circuit") issued a Judgment(Docket No. 87)
affirming the dismissal.  In finding no abuse of discretion by
this Court, the First Circuit stated:

> The district court dismissed pro se appellant Arlene
> Claiborne-Ingram's complaint with prejudice after she
> repeatedly failed to produce documents subpoenaed by
> defendant/appellee and failed to respond to a
> procedural order issued by the district court requiring
> an explanation regarding the status of the documents,
> despite the district court's explicit warnings that
> such failure could result in the dismissal of her
> complaint.  During the final phase of the litigation,
> when appellant failed to respond to the district
> court's procedural order and the sanction of dismissal
> was imposed, appellant was represented by counsel.
>
> We review the district court's action for abuse of
> discretion.  <u>National Hockey League v. Metropolitan
> Hockey Club, Inc.</u>, 427 U.S. 639, 642 (1976).  Whether a
> sanction constitutes an abuse of discretion is
> determined by "considering all of the pertinent
> circumstances, 'including the severity of the sanction,

the legitimacy of the party's excuse, repetition of violations, the deliberateness vel non of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and adequacy of lesser sanctions.'" <u>Latin Am. Music Co. v. The Archdiocese of San Juan of the Roman Catholic & Apostolic Church</u>, 499 F.3d 32, 44 (1st Cir. 2007) (quoting <u>Ruiz-Rosa v. Rullan</u>, 485 F.3d 150, 153 (1st Cir. 2007)).

Despite appellant's repeated disregard of court orders, the district court denied two motions to dismiss and gave appellant every opportunity to comply or explain why she could not comply with the document subpoena. The district court twice warned appellant that her case could be dismissed if she did not comply. Despite these clear warnings, appellant continued her disregard of the court's orders. Based on this pattern of misconduct, it was reasonable for the district court to conclude that a lesser sanction would have made no difference. <u>Malloy v. WM Specialty Mortgage,LLC</u>, 512 F.3d 23, 26 (1st Cir. 2008).

Judgment (Docket No. 87). <u>See</u> <u>Claiborne-Ingram v. Hatfield</u>, No. 10-2358 (1st Cir. 2010).

On July 19, 2011, Claiborne-Ingram filed, in the First Circuit, a Petition for Panel Rehearing *en banc*. Thereafter, on November 18, 2011, she filed a Motion to Stay Appellate Proceedings, seeking a remand of the case to the District Court. In that motion, Claiborne-Ingram recounted the issues addressed in the District Court with respect to the defendant's distribution of trust assets. First, she argued that Hatfield disobeyed Magistrate Judge Collings's Order denying him permission to pay bills from the trusts' estate, because bills

were, in fact, paid from the trusts' assets.  She further asserted that Hatfield breached the fiduciary duties owed to her according to the trust terms.  Additionally, she asserted that she was entitled to a judicial hearing or trial in the District Court, as the place where Hatfield's alleged "contempt" occurred.  Finally, she asked the First Circuit to remand the case to the District Court for an adjudication on the merits of her claims under the trusts.

On December 9, 2011, the First Circuit issued an Order denying both Claiborne-Ingram's Petition for Rehearing *en banc* and her Motion to Stay Appellate Proceedings.

On December 15, 2011, Claiborne-Ingram filed a Motion to Extend Time For Filing a Motion for Rehearing *en banc*.  On December 29, 2011, Hatfield filed a response to that motion in the First Circuit (which is substantially similar to the response filed in the District Court in opposition to the Motion for Contempt).

While the appeal was pending, on December 21, 2011, Claiborne-Ingram filed, in this Court, a Motion for Contempt (Docket No. 88).  On January 9, 2012, Hatfield filed an Opposition (Docket No. 90), and on January 12, 2012, Claiborne-Ingram filed a Reply (Docket No. 91).

On January 31, 2012, the First Circuit issued a Mandate (Docket No. 92) in accordance with the July 5, 2011 Judgment.

B.    The Motion for Contempt

In her Motion for Contempt (which contains an incorporated memorandum of law and exhibits in support), Claiborne-Ingram asserts that she is entitled to relief, pursuant to Rules 65 and 60(b)(3) of the Federal Rules of Civil Procedure, to request this Court set aside the judgment dismissing this action and enter an Order finding Hatfield in contempt for disobeying this Court's preliminary injunction, and for perjury and misrepresentation.

In support of the motion, Claiborne-Ingram argues that during the hearing in 2009 on her Motion for a Temporary Restraining Order, Hatfield stipulated that no distributions from the irrevocable trust would be made until this litigation was resolved or until further order of the Court.  She contends that this Court relied upon that representation in denying her motion, not only during the initial hearing, but also in connection with her motion for a rehearing.  Further, Claiborne-Ingram points out that Hatfield's motion for permission to pay bills (attorney's fees) was denied by Magistrate Judge Collings on March 4, 2010 based on the representation made to this Court, and based on the belief that trial on the merits would resolve the case shortly. She contends that Hatfield violated this Court's pretrial

13

scheduling order with respect to the completion of discovery, because Hatfield has refused to give her financial data (final inventory and account) as to the assets and debts in the trusts. She takes issued with Attorney Henderson's representation to this Court that he had provided every financial record which was provided to him by the trustee (Hatfield), contending that he did not provide all the financial information.  She claims this refusal to disclose information prevented settlement of this case and caused an increase in expenditures and delays in the closing of Ingram's estate.

Next, Claiborne-Ingram contends that in November 2011, Hatfield forwarded to her a UBS Money Market Account Statement indicating that he had, in fact, distributed funds to Attorney Henderson for his legal fees.[6]  She claims this distribution violates the Court Order and thus constitutes civil contempt. She also claims Hatfield failed to participate in good faith (presumably in connection with settlement discussions).

---

[6]In the exhibits attached to the Motion for Contempt filed in this Court, Claiborne-Ingram submits a copy of the Ingram Trust Income & Expenses from 1/1/2010 through 12/3/10.  This document reflects a beginning balance of $479,282.63 and $63.79 in total taxable income and other income, for a balance of $479,347.47. The document also reflects expenses, including expenses for legal fees to Attorney Henderson totaling $12,772.24, as well as other administrative expenses (*i.e.*, tax preparation, annual fees). See Exhibit (Docket No. 88-4).

As relief, Claiborne-Ingram requests that sanctions be imposed against Hatfield for civil contempt, by ordering compensation to her for damages stemming from the non-compliance, and by ordering compliance with Court orders. She also seeks an Order setting aside the Judgment of Dismissal entered against her in 2010, and an award of attorneys' fees.

In Hatfield's Opposition (Docket No. 90), he notes the procedural history of this case and of the appeal, contending that the appellate case is still pending, although noting that it is not clear precisely what relief Claiborne-Ingram is seeking from the First Circuit in connection with her December 15, 2011 Motion to Extend Time, particularly where the First Circuit had already denied her petition for rehearing *en banc* on December 9, 2011.[7]

Next, Hatfield contends that on October 29, 2010, this Court dismissed this action <u>with</u> <u>prejudice</u>, but Claiborne-Ingram never filed a motion to stay the Judgment request injunctive relief either in this Court (prior to filing her appeal) or in the First Circuit during the pendency of the appeal. It was only on November 18, 2011 that she sought relief from the First Circuit, which was denied on December 9, 2011.

---

[7]Since the filing of the Opposition, Mandate issued.

Further, Hatfield argues that the basis of Claiborne-Ingram's Motion to Stay in the First Circuit, and the basis for the instant Motion for Contempt, was the payment of fees and expenses by the Trustee, based on the accounting which Hatfield voluntarily provided to her.[8]

Next, addressing the legal impediments to Claiborne-Ingram's Motion for Contempt, Hatfield argues that this Court lacks jurisdiction to rule on this motion, because this case is still within the purview of the First Circuit. Moreover, with respect to Claiborne-Ingram's incorporated request to have this Court set aside the judgment, Hatfield argues that the motion is not only unfounded on the merits, but is not timely made under Rule 60(c)(1) of the Federal Rules of Civil Procedure because the motion was made more than a year after the entry of Judgment of Dismissal, or the date of the proceedings forming the basis for the claim of fraud, material misrepresentations, or misconduct in pursuit of the judgment. Rather, Hatfield asserts that the Motion for Contempt (and to set aside Judgment) was made 26

---

[8]It appears that Hatfield advances an argument that since he provided the accounting from both trusts willingly to Claiborne-Ingram – even though she might not be entitled to an accounting of both trusts -- there was never any bad faith in paying the legal fees; the action taken by Hatfield as Trustee was made in the spirit of transparency and openness. Opposition (Docket No. 90 at 6).

months after the hearing on the Motion for a Temporary Restraining Order, and 14 months after entry of the Judgment.

As an additional basis for denial of Claiborne-Ingram's motion, Hatfield argues that her claim of contempt was not advanced in good faith, nor based on any actions by him; rather, it was asserted simply because she had exhausted all of her post-judgment rights in the First Circuit.[9]

Next, Hatfield argues that the matters raised in the instant motion were already addressed and denied by the First Circuit and thus are not subject to further review by this Court.

Further, while Hatfield concedes that he <u>did</u> pay legal fees from the trust, he maintains that he has <u>not</u> engaged in any misconduct or contempt because there was no District Court Order in effect which could have been violated. This is because this case had been dismissed by the District Court in Hatfield's favor. In other words, Hatfield contends that, at the time expenses were paid from the trust, there was no legal obligation to seek the District Court's approval to pay legal fees and bills because defense counsel's representation made during the pendency of the litigation in the District Court had expired "upon further

---

[9]The Court presumes Hatfield is putting forth an argument that Claiborne-Ingram is estopped from asserting contempt by him for violation of Court Orders, because she has "unclean hands" where she was sanctioned for violating Court Orders. In support, Hatfield also cites to the First Circuit Judgment of July 5, 2011 noting Claiborne-Ingram's repeated disregard of court orders and her pattern of misconduct.

order of the Court" and upon the dismissal which rendered the litigation no longer "pending."

Moreover, Hatfield argues that even if there had been Orders by the District Court in place, there has been no violation of those Orders. This argument hinges on the interpretation of the word "distribution" as it relates to payments from the trust. Hatfield asserts that the word "distribution" relates to payments made to the beneficiaries of the trusts. It does not, he contends, relate to the day to day fiduciary responsibilities of the trustee, which included the preparation and filing of fiduciary tax returns, paying taxes, and paying other legal and administrative costs relating to the operation of the trusts. Hatfield contends that, even giving the term "distribution" the broadest possible construction, nothing Claiborne-Ingram has put forth in support of her arguments suggests that he made "distributions"; instead, he argues that he had paid "fees, expenses and taxes."

Further, Hatfield argues that it is Claiborne-Ingram who warrants sanctions because of her refusal to comply with discovery orders of this Court. This required the defendant to file three separate motions to dismiss, one of which resulted in dismissal. Additionally, Hatfield contends that he was subjected to several motions to stay, compel, for a protective order, and for reconsideration, all of which were without merit and were denied. This pattern of filing pleadings was, he contends,

designed by Claiborne-Ingram to delay the administration of justice in both the District Court and First Circuit as well as in the Probate Court in connection with the appointment of Hatfield as Administrator despite the fact that he was named as Executor in Ingram's Will.

In short, Hatfield argues that Claiborne-Ingram's filings are frivolous in nature, and cause further delay and harm to the beneficiaries of the trusts and estate, and further cause the estate to incur significant additional and unnecessary expenses.

Finally, Hatfield contends that Claiborne-Ingram is in violation of the Court's Order (adopting Magistrate Judge Collings's Report and Recommendation) to pay attorney's fees to Attorney Henderson. Thus, apart from the violations of other Court Orders relating to her deposition and production of documents, Claiborne-Ingram comes to this Court seeking relief when she herself continues to defy the Court Order with respect to counsel's fees.

In her reply brief, Claiborne-Ingram reiterates her allegations of violations of Court Orders by Hatfield, and asserts that this Court does have jurisdiction over the motion by virtue of a "consent order" agreed to by Attorney Henderson. She further asserts that Rule 60(c)(1) is not applicable, but then asserts a new argument, *i.e.*, that Rule 60(d)(3) is appropriate to set aside a judgment for fraud on the court. Additionally, Claiborne-Ingram now asserts that the defendant has made

misleading statements and/or misrepresentations to the Courts, to the IRS, and to the Massachusetts Department of Revenue which have caused her irreparable harm.  She further contends that the defendant misappropriated funds amounting to $604,000.00 or more.

## II.  DISCUSSION

Upon review of the entire record, and particularly the record of the hearing on the Motion for a Temporary Restraining Order, this Court finds that Claiborne-Ingram has failed to meet her burden to demonstrate that Hatfield's action in paying Attorney Henderson his legal fees constituted contempt or "a fraud upon the Court."  Rather, the record reflects that it was only <u>after</u> this action was dismissed and a final Judgment entered by this Court that Hatfield paid Attorney Henderson's legal fees. Once the case was dismissed in this Court, it was objectively reasonable for Hatfield to presume that a final Judgment had entered, and to further presume that any preliminary order by this Court restraining disbursements (based on counsel's stipulation) would have expired, particularly where: (1) the dismissal was <u>with</u> <u>prejudice</u>; (2)the stipulation was that no disbursements would be made "until the litigation is resolved with respect to that trust <u>or</u> further order of the Court";[10] and (3) no motion for reconsideration of the dismissal or to continue

---

[10]A dismissal of all of Claiborne-Ingram's claims could be construed to fulfill the "further order of the Court" contingency.

the stipulation pending appeal was filed in the District Court before an appeal.

There is no evidence that Hatfield took this action knowingly or willfully in violation of this Court's Orders. Hatfield reasonably could have believed that the purported restraining order (based on counsel's stipulation) only encompassed "disbursements" to the beneficiaries, and did not contemplate that ordinary administrative expenses or legal fees could not be paid by the Trustee.  As noted above, this Court had an extensive discussion regarding payment of attorney's fees at the hearing on October 6, 2009, as well as a discussion about the necessity of having an Administrator appointed as soon as possible in order to begin the process of administering the trusts and estate.  To reiterate, this Court stated at the hearing that (referring to Attorney Henderson) "He gets paid.  I don't know what he makes an hour, but he gets paid.  And so that money will probably either come out of the trust or come out of the estate, which means it comes away from you.  So just understand that basic fact of life.  If he's representing the administrator, it comes out of the estate.  If he's representing the trustee, I don't know if it ... It comes out of the body of the trust."  Transcript (Docket No. 13 at 24, lines 6-24).  When set in context of the hearing (which focused on (presumed) past

and future disbursements to other beneficiaries), Hatfield's interpretation is correct and reasonable.[11]

Accordingly, for all the reasons set forth above, the Motion for Contempt (and incorporated Motion to Set Aside Judgment) is <u>DENIED</u>.

## III. CONCLUSION

Based on all of the foregoing, it is hereby Ordered that Plaintiff's Motion for Contempt and incorporated Motion to Set Aside Judgment (Docket No. 88) is <u>DENIED</u> in all respects <u>with prejudice</u>.


SO ORDERED.


<u>/s/ Patti B. Saris</u>
UNITED STATES DISTRICT JUDGE

---

[11]The fact that during the course of the proceedings Hatfield sought Court permission to pay attorney's fees does not mean that the failure to do so <u>after</u> the case had been closed constituted fraud upon the Court.